May it please the Court, my name is Christopher Todd. I am an immigration lawyer here in the Bay Area and I represent the petitioner Roberto Ortega-Mendez. We have two primary arguments I'd like to focus on. Of course I'm most interested in what the court, the concerns and the questions of the court. The overarching question here is whether the petitioner is precluded from eligibility for cancellation for removal under 1229-8 U.S.C. Not eligible for cancellation of removal. Is that what you're saying? Yes, yes, Your Honor. The immigration judge found he was not and I contend that he is. That's one issue. Well, that's the overarching issue. My primary argument, Your Honor, is that his, the conviction, the California conviction was under, was simple battery under California Penal Code Section 242. The immigration judge found that that satisfied, that that constituted a crime of domestic violence under 8 U.S.C. 1227-A2E. And So you're going to argue that it was a crime of violence and it was domestic? I'm going to argue that it was not, Your Honor. I'm sorry. It was not a crime of violence and it was not domestic. I'm nervous enough. Are you arguing both of those things? And did you raise both of those things to the BIA? Yes, Your Honor. We did. I'm arguing that the You preserved both of those? Yes, Your Honor. I believe we did. We argued that, we're arguing that the, the crime is not a categorical match under a Taylor analysis to the, the California conviction is not a categorical match. It seems to be pretty clear that it's not a categorical match. Well, it seems, it seems clear to us, Your Honor. The, the immigration judge didn't agree. Does the modified categorical approach hurt you or? I don't believe so, Your Honor. But it's our contention, at least at the outset, that we shouldn't even be talking about the modified categorical approach. The categorical approach under the precedent of this court, we should be comparing the necessary elements of the conviction statute with the elements of the generic immigration statute. And if there's not a match, the inquiry should end. Well, what if we want you to do the modified categorical approach? Certainly, certainly. What you're saying is, is this, as I understand it. It's that the modified categorical approach is used essentially when there are several different ways that you can be convicted for a certain crime, like a, or a burglary covers burglary of a, of a, of a car and burglary of a house, and we need to know which one it is because one is generic burglary and the other one isn't. But, but here, what you're saying is that the victim is simply irrelevant to the crime. Under, under the specific terms of the conviction statute, yes. And so you're arguing, therefore, that we just shouldn't be worrying at all about who the victim is. Yes, Your Honor. Under, under the Taylor, under the Taylor categorical approach, yes, the inquiry should end. You're suggesting a, a limitation on the use of the modified categorical approach, which our cases don't really reflect, but, but may, if you examine it, exist. Well, I would, I, I would suggest, Your Honor, that Singh v. Ashcroft, which came down after briefing, does engage in this very specific and, and very limited categorical approach. And it specifically says that you, that, that the court is to examine the necessary elements of the conviction statute, and if they're not a categorical match with the, with the generic immigration statute, or the, the federal statute at issue, then, then the inquiry stops. And that's what, that's what this court did in Singh v. Ashcroft. Well, that can't be quite right either. I, I, I, I need to look back at Singh, but that doesn't seem, we know that the, this modified categorical approach has some role, and the role obviously is in situations in which the elements don't exactly match. That's what you use it for. Well, if I could give an example, a general example. A, a, a true divisible statute with a modified, where, where you're not going to get a categorical match is, is a situation that you described a moment ago, when the statute has a specific, has specific elements in the alternative. And we don't know which one, which one was. Well, but some batteries clearly can be violence. Some batter, I mean, if you, if we accept your argument that it's not categorical, some batteries could be a touching, and some could be clearly violence. And let's say that your client came in and said, you know, as part of the plea, the colloquy was that the factual basis was that on such and such a date, that he punched his, his, his wife, so and so, that he lives with, and he has children with, and all of that, in the face, and that she had to, she had a black eye, and she had a broken rib, and she had, and she went to the hospital. And he, and he goes, I agreed that factual basis, and I plead guilty to that. And you're saying then, under a modified, that we could not find that that was a crime of, that it was a crime of violence. Well, your Honor, I, I, that is, at this point I'm talking about the divisibility with respect to domesticity, not to the violence prong. And it, it, you're bringing up the violence prong. And in that case, it would depend what he actually pled to. Did he plead to, to Penal Code 242? Did he plead to 272? If he pleads to 242, and you apply the categorical approach, then it still could be a crime of violence. Some 242s are. Violence is what we, is, is the inquiry. I understand. You're, you're making this argument only with respect to the domestic violence victim issue, and not with respect to whether, to the crime of violence prong. Well, I believe we could make it for the violence prong as well, and I'm, I'm prepared to do that. It's a little more convoluted. Excuse me, I, I, you're arguing that under neither the categorical nor the modified categorical approach was this established as a crime of violence. Crime of domestic violence. Domestic, it was the domestic part. Right. You're not arguing the violence part. I, I, I will be arguing that. I can do that right now if you'd like me to. It's just, it's. Okay. Well, I just want to know you're not abandoning that. Oh, no, you're not. No, you're not. That's what. I, I'm, we're arguing that it's neither a categorical match under the domestic prong or the violence prong, and if the court decides under either of those prongs that it is a categorical match and we move to the modified categorical approach, we're also arguing that it's not a, it, it, that under the modified categorical, categorical approach, the judicially noticeable facts do not establish that it was a crime of domestic violence. Well, it's, it's, the modified categorical approach does not establish the violence factor because it refers to 242 as the battery, which is not, as far as immigration law is concerned, a violent act or whatever. It doesn't necessarily need to be. It does not necessarily need to be a violent act. What do we do with United States v. Robinson? And U.S. v. Robinson, I believe, was a sentencing guidelines case. Right. But the language was the same, basically, no? I, I believe on the sentencing guidelines that you end up looking at another, it, it, it wasn't a, it was, it wasn't a determination under the, under 1227-18. Well, it, it wasn't just a formal matter, but I'm wondering if, if there was any cognizable difference in the definition. Well, I, I would. From what I understand about. Well, it does address whether battery, battery against a police officer was a crime of violence. And it says that it was. And under, and battery, when a police officer was, was part of that statute, was, was somewhere in the record. I'm not, I, I'm not as familiar with that as I should be because after that came down, well, U.S. v. Bellas came down far after Robinson came down. But it, and that establishes that domestic violence that, well, we're moving to the violence prong. And I was trying to focus on the domestic prong, prong, so I don't confuse myself too much. But under, under the California law, under California state law, even after people v. Robinson, the, the, a battery does not, can be the least offensive touching. There's no, there, there is absolutely no requirement that it cause any damage whatsoever under, under Penal Code 242. And that, but again, the damage isn't particularly relevant, but it's also true that, that California has said that it doesn't really need to be, although it says force of violence, it doesn't have to be either force or violence with that. Correct. It can be the least, the least touching, as long as it's an offensive touching. And if I could move on, I, I, I'm sorry to jump around between categorical approach and modified categorical approach. If, if I could address the categorical approach with respect to the violence prong. The 1227A2E requires, the domestic violence statute, federal statute requires that a crime of violence, well, it refers to 18 U.S.C. 16, Section 16A, which requires that, defines a crime of violence, it says the crime of violence has to have as an element the use of physical force. Yet this Court has said that what that really means is violent physical force. And so based on that, Section 242 in the California Penal Code, there is no requirement of violent physical force. That's the categorical approach. That's categorical. And that's why I'm saying that there's not, under the violence prong, it's also not a categorical match. Either under domesticity or violence, there's not a categorical match. Okay. Period. Now, now you're going to talk about the modified where the entry was entered a plea of nolo contendere to the charges of 242 PC, missed R and R, count one. Yes, Your Honor. Now that's, is that the only thing we can look at? In the modified categorical approach to determine whether or not this was a crime of violence and whether it was domestic in nature. Yes, Your Honor. What the Court may look at, as the Court knows, a, the Court can look at the complaint or the charging document, plea transcript, and the judgment. Okay. Here in the charging document, initially the charge is one that would have to satisfy the domestic relationship. And it lists a name, Rosa Doe. Then the amended is still the same victim. But what I would, what I suggest is a different chart. So I'm, I'm struggling in terms of what you can look at both. I don't think that domestic relationship has changed there. I think that when you take, if, if you just started out with a 242 of a Rosa Doe, you don't know anything from that. But when you go from the original charging document and you amend it from there with the same victim, it, it gives you a pretty strong inference of the relationship. Exactly, Your Honor. But the inference is not enough under the modified categorical approach. What I would suggest and what I think the law supports is that it, of course, it was charged as a 273.5, crime of domestic violence, and that was count one. He did not plead to that count as charged. There's nowhere. It tells me that what he did might be different. It doesn't tell me that who he did it to is different. But, but the Court. In fact, it doesn't tell you whether it's her spouse or not. It was alleged to be a spouse, but it didn't plead to it being a spouse. What I'm saying is we don't get to look at that because the, his, his plea was to an amended count one. We do not know how it was amended. There's not a plea transcript in here. We don't know what happened at the plea colloquy and the paper that we're allowed to look at or any other paper, it doesn't say he pled to count one and count one, 273.5 was crossed out and 242 was written in and everything else stayed the same. He did not, there's nothing in the record that says that he pled to count one as alleged in the plea. How do we know, Judge Callahan said, and she may be right, but I can't see it, that the, the crime that he pled to was the same victim. Is it in here? Does that say that? Well, that's my point. It's not in there. I mean, you can certainly, we can certainly, the inference is certainly there. There's nothing in the, in the final documents that say it is the same victim. Correct, Your Honor. But more than that, there's nothing that says it was a spouse. Well, but the initial charge says it was a spouse. And is it, and then what, and then how does it get amended? It, it can, however the prosecutor, however the prosecutor wants to, the prosecutor can do it orally. In my experience, the prosecutor can do it orally and the prosecutor can. What do we have in the record? Not how they do it on any. Well, we have nothing in the record. That's, that's the problem here. But you said the 242 written. Oh, I, that, I'm sorry. That was an example. I'm saying we don't know how, we have no idea how this was amended. All we know is he pled to 242 and under our, it's our contention that that's all we have to show is that he, that he pled to 242. Also there's a check for insufficient evidence. Does that mean that that's why, why court, count two is dismissed for insufficient evidence. Yeah, count, count two I believe is, is irrelevant here because it was. Sexual intercourse with a spouse. For all we know, it really wasn't his spouse and that's why they said there was insufficient evidence of count two and that's why they, they changed it to 242. That could be, as far as these documents show, it could be or could not be. And then what we say is we have to know in order to make this finding that he's not eligible to apply for cancellation. We have to know. Right. Okay.  Thank you, Your Honor. I see that you're doing several of these arguments, so perhaps you can help illuminate us in a non-repetitious fashion. I'll do my best, Your Honor. My name is Allison Drucker. I'm here representing the United States. We definitely accept the categorical and modified categorical approach as applicable to all of these cases. And our position is that the battery conviction under California 242 is per se a crime of violence. Our position flows from the fact that basically the wording of the California statute tracks the wording of Title 18, 16A. Well, that's true, but there's a myriad of California cases essentially saying, but we don't mean it. And I understand it's a strange circumstance, but they're quite emphatic and very clear about it. And they say that violence, first of all, that force and violence are the same thing. And second of all, that they just mean least touching and don't have to, and all it has to be is offensive. And it's said over and over again. So why shouldn't we pay attention and believe them? Well, I think my understanding of the categorical approach is that you're supposed to be looking to the wording of the statute. Really? You really mean that? That we don't look at what it really means under California law? We look at the words of the statute, but we've got to look at the law to see what the words mean. That's the point. Well, I think that Colantano, or by the California Supreme Court, that talks about that touching essential to batter may be touching of a person's clothing. And that's after Robinson. So if the California Supreme Court is saying after Robinson that a touching of the clothing can be enough, how do we say that this statute doesn't encompass more than violence? Because a touching isn't going to be violence of a person's clothing. That's not going to be. Well, the federal definition of the crime of violence doesn't just include the use of force or attempted use of force. It also involves threatened use of force. So if the context of that act is such that it would be perceived as threatening by the person. Somebody was fleeing. Somebody grabbed them. That's fine. And clothes. That can be seen as a threat. And so, certainly, a large chunk of. But if that's a violence, if that's a touching, if that's a battery under California law, is that the same? Well, I don't believe that, you know, any prosecutor would attempt to prosecute for that act. Well, I agree with you, but we still have to look to everything that can be covered. I mean, could they charge that?   I don't know.  I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. Apparently, under California law, if I said to Judge Callahan, you know, I'm really terribly offended if anybody touches me and she goes and touches me, that is a crime of battery. Well, I guess I'm finding this difficult to respond to because it seems to me that the force or violence is shown in the wording of the battery and the force or violence is shown in whether a prosecutor would decide whether or not to charge under the battery, but you're saying that there's sort of a layer in the middle, it's kind of like a sandwich. Well, in the strict categorical approach, if more can be punished than doesn't qualify as force or violence, then you lose on that and then you go to the modified categorical approach. I mean, that's what the law says. Right. Right. And so that's what, you know, I don't like this. Trust me. And Robinson's an easy answer, but the question is, in view of what the California Supreme Court has said after, have they said that, you know, have they answered that? Have they eroded what is said? If the California Supreme Court had not spoken and we just had Robinson, I'm with you all the way. But do you think the California court taking that position, I mean, does that, does that what, free this court in a panel situation from following Robinson and applying Robinson? Well, that's an issue. Do we have to go on bonk or, but it is California, I mean, all, but if the California Supreme Court says this is what our statute means and it's not the same as what the federal statute means, then do we distinguish it or do we have to go on bonk on Robinson or whatever? I guess that's the issue. Well, I would say that I hadn't addressed Robinson up to this point, but I mean, that's the whole focus of why we're here. Right. Well, I'd say that, you know, that Robinson is construing exactly the same language as you pointed out before in the sentencing guidelines context, but it's exactly the same language as the Title 18, Section 16a language, which, again, you know, tracks the California battery and does conclude that, that, that battery is a crime of violence. So. But Robinson did not, first of all, have the benefit of the California Supreme Court. Secondly, it didn't seem to recognize what the, didn't discuss whatever the California law was at that point. And thirdly, there is the intervening Supreme Court case of Leocal, which isn't precisely on point, but which does emphasize that a crime of violence has to be violent. I have difficulty seeing the application of Leocal in this particular situation, seeing that here we're actually talking about, you know, physical contact with a person rather than. But in Leocal, you could kill someone as a drunk driver, and it's not a crime of violence. You can injure someone as a drunk driver, and here you're arguing that if I touch Judge Berzon into Berzon and doesn't like it, that, where that's, that's okay. Certainly. I just think the Leocal situation is more attenuated. You know, what someone has done is, is made obviously a bad decision in terms of getting into a, into a car, stuck in a car that's hitting them, not a person doing something directly. However, I see, I see that. So just to go on with a minute for Leocal. Leocal says that the, we cannot forget that we are ultimately determining the meaning of the term crime of violence. The ordinary meaning of this term suggests a category of violent active crimes. And it seems to me that that is something of an override on Robinson as well. In other words, we need to see whether this is a violent active crime. And as defined, it doesn't seem to be. I don't know. I see Leocal as, you know, a mens rea kind of thing. So I, again, I don't, I don't know that it's that instructive in the situation. But I, I understand the, the concerns that you have about whether, whether the statute here, you know, fits under the categorical approach. So I guess maybe what I need to do is move on to the modified and hope that I have some time. But do you want, you'll, you'll have several arguments. So perhaps the best thing you could do right now is concentrate on the facts of this case, because that you're not going to get to do again. How does this satisfy, if we have to go to the modified, how does the record in this case satisfy the modified? Okay. Well, I think it's, although my, my opposing counsel may not agree, given what he wrote in his brief, I, I think it's pretty clear from various precedents of this court that looking at, at court records, that looking at an indictment and then the papers together can be used to reach a conclusion about domestic violence. And I rely on Bonat, Franklin, and Martinez-Perez for that, that statement. Now, here, there's a couple of things. Excuse me. There's a new opinion in Martinez-Perez, which says that you can't have, you cannot rely on the charging document if that wasn't what he was convicted of. Are you aware of that? Perhaps I'm making a misstatement, Your Honor. Okay. If so. There is a revised opinion in Martinez-Perez. Okay. Well, I thank you for your bringing that to my attention. I'm sorry. Okay. In, in, in this case, if you look at the, the pages in the record, 156 through 159, that's where the court documents are. First of all, the, the indictment has two felony charges. The first one is for, let's see, 273.5, infliction of corporal injury resulting in a traumatic condition. And the second one is basically for forcible sexual intercourse or rape under 262. Now, on 158, the NOLO contendere is to 242 PC, a penal code, misdemeanor, and then count one is specifically referenced on that page. So there's definitely a connection. This is R slash R, count one. Is there any evidence as to what R slash R means? There, there's no evidence in the record that I'm aware of. Maybe reduced and related, but we don't know. I was thinking along those lines, too, Your Honor. Okay. Well, that helps me on who the victim is. Uh-huh. But it doesn't help me on what the act is. Okay. Well, the other, the other point is the, the sentencing. The sentencing includes a requirement of completion of a batterer's treatment program, and it's mentioned several times on AR-159. And I think this is significant because under California law, there's a provision which specifically says when a battery is committed against a spouse, if probation is granted or the execution or imposition of the sentence is suspended, defend and participate for no less than one year and successfully complete a batterer's treatment program. Now, if a battery can be a touching, would you send someone, I mean, would any? No, I would not. And I completely, I completely agree. Well, no, I would not as a judge. But by the same token, you know, I have to, what can we see from the record? Well, I think, I think that, you know, the substantial evidence test covers not only facts, but reasonable inferences from facts. And it seems to me that the reasonable inference of someone being sent to a batterer's treatment program is that they did something, you know, nasty, violent or forceful. But wait a minute. Is there a requirement that ‑‑ I'm actually not concerned so much with the violence now, but with the domestic relationship issue. There's no statute that says that that's the only circumstances in which you could send somebody as part of the sentence to a batterer's treatment program, right? I would guess that under the more serious, like, you know, the felony charge that was originally placed here, that that would also be something that might well have someone be sent to the batterer. In general, with regard to sentencing, you can have conditions on sentencing that aren't directly related to the crime that he was convicted of. In other words, even if they ‑‑ let's suppose this was the problem. They had a problem for some reason proving that this was his spouse. They alleged originally it was his spouse, but that became a difficult thing to prove. And that's why they decided to reduce it to just a battery, because they thought, well, we can't be bothered. It's too much trouble to prove that it's really his spouse. Maybe it was a common-law spouse. Maybe it was a living girlfriend. Maybe she really lived with him at all. Who knows? But that wouldn't preclude a judge, as a condition of sentencing, from sending him to a batterer's program, right? Even if it wasn't his spouse. Even if it didn't meet the conditions of the first alleged crime. I can't say that it would be impossible that someone else would ever be sent to such a program, but it seems to me clear, again, that there's a reasonable inference that the purpose of this program existing in the first place is to try to ‑‑ Yes, but let's assume even that it has to do with some sort of domestic violence. But the original allegation was that she was a spouse of the defendant. Right. It's no proof that she was, in fact, the spouse of the defendant. That was the original allegation, right? Well, I can't remember if it was a ‑‑ you know, the statute covers spouse, cohabitant, former. I understand that, but you're arguing that this was really simply the original count, and the original count was that it was his spouse. Uh-huh. We don't know that. Hmm. I'm not aware that there's something else that specifically would address that, except, as I said, the reference to count one. What is the charging language of the original? Yeah. Well, that's what I'm saying. You know, if you accept this ‑‑ the conviction with a reference to the original count one, the count one definitely talks about Rosa Doe, who was then in there the spouse of said defendant. And that language is repeated in count two as well, the spouse of Rosa Doe. Which is then dropped for insufficient evidence. And we don't know what the insufficient evidence yet was. But for all we know, it was that she was the spouse. In any event, thank you for your argument. I appreciate it. Counsel, I think we're used up all your time. So thank you very much. We appreciate the arguments in Ortega‑Mendez v. Gonzales. And we will now go to Cisneros‑Harris v. Gonzales.
judges: Thompson, Berzon, Callahan